IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QX LOGISTIX, LLC, | |
| Petitioner, | |
| v. | C.A. No. 25-90-MN |
| The UNITED STATES SMALL BUSINESS ADMINISTRATION and KELLY LOEFFLER, in her official capacity as Administrator of the United States Small Business Administration, | FILED<br><br>JAN 2 1 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |
| Respondents. | |

## REPORT AND RECOMMENDATION

In this action, Petitioner QX Logistics, LLC ("QX" or "Petitioner") seeks judicial review of Respondent United States Small Business Administration ("SBA") and Kelly Loeffler's (together with SBA, "Respondents" or collectively "SBA") administrative decisions denying QX full forgiveness of a Paycheck Protection Program ("PPP") loan. The parties have cross-moved for summary judgment (D.I. 52, "SBA's Motion" and D.I. 54, "QX's Motion."), and the motions are fully briefed (D.I. 52, D.I. 54-1, D.I. 55, D.I. 56).[1] For the following reasons, I recommend that SBA's Motion be GRANTED and QX's Motion be DENIED.[2]

---

[1]    The Court did not permit reply briefs. (D.I. 45).

[2]    The motions were referred to me on October 8, 2025. (D.I. 58).

## I. BACKGROUND[3]

### A. PPP Loans

In response to the 2020 COVID-19 pandemic, Congress passed the CARES Act of 2020, Pub. L. 116-136, 134 Stat. 281 (2020) and created government-backed, forgivable PPP loans. *Shop Rite, Inc. v. United States Small Bus. Admin.*, C.A. No. 25-30028, 2025 WL 3188380, at *2 (5th Cir. Nov. 14, 2025). Administered under Section 7(a) of the Small Business Act, "[t]he PPP . . . directs the . . . SBA . . . (1) to guarantee loans to certain eligible businesses, and (2) to forgive those loans, if certain additional conditions are met." *Bruckner Truck Sales, Inc. v. Guzman*, 148 F.4th 341, 344 (5th Cir. 2025) (citing 15 U.S.C. §§ 636, 636m). To calculate a borrower's maximum loan amount, the CARES Act differentiated between applicants who were "not in business" during the period beginning on February 15, 2019 and ending on June 30, 2019 (15 U.S.C. § 636(a)(36)(E)(i)(II), "Section (II)") and those that were (15 U.S.C. § 636(a)(36)(E)(i)(I), "Section (I)").[4] A borrower is not entitled to forgiveness of loan funds it was ineligible to receive. *Bruckner*, 148 F.4th at 344.

### B. Procedural History

QX, a Delaware LLC, and its New York subsidiary QX Logistix, LLC (the "Subsidiary") were formed in April and May 2019 to purchase certain assets from two bankrupt companies: EZ Mailing Services, Inc. ("EZ") and United Business Freight Forwarders LLC ("UBFF").[5] On June 7, 2019, QX entered into an Asset Purchase Agreement and a Transition Services Agreement with

---

[3] Relevant facts are taken from the Administrative Record (D.I. 48, "AR") and the parties' respective statements of facts. (D.I. 53, D.I. 54-2, D.I. 55-1, D.I. 57). The parties agree that the material facts are undisputed. (D.I. 52 at 12; D.I. 55 at 7).

[4] The CARES Act also sets forth a different calculation for a "seasonal employer," which is not at issue here. 15 U.S.C. § 636(a)(36)(E)(i)(I).

[5] EZ and UBFF were involved in Chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the District of New Jersey.

EZ and UBFF.  For approximately 30 days thereafter, QX operated EZ and UBFF until QX secured certain permits and insurance.  During that time, QX maintains that it was not in operation and had no payroll (D.I. 54-2 ¶¶ 8-9), characterizing its expenses as "reimburs[ing] EZ and UBFF for EZ and UBFF's operating expenses, including payroll."  (D.I. 55-1 ¶ 3).[6]

On May 11, 2020, QX applied[7] for a PPP loan in the amount of $1,541,000.00.[8]  In its loan application, QX calculated its maximum eligible loan amount using the "not in business" methodology set forth in Section (II), believing it was "not 'in business' under the law and guidance."  (D.I. 55-1 ¶ 6).  Two days later, QX received the $1,541,000.00 loan and used it for payroll costs.

On October 25, 2021, QX applied for full forgiveness of the loan, which SBA only partially granted in a May 14, 2024 Final Loan Review Decision (the "Decision").[9]  SBA concluded that

---

[6]       With respect to facts bearing on whether QX was "in business," I note two factual inconsistencies in comparing QX's instant submissions versus what QX told SBA in the administrative proceedings.  First, while QX pleads that "QX Logistix did not generate its own payroll until July 2019" (D.I. 2 ¶ 19) and QX's Statement of Facts states that QX it "did not incur payroll costs" until July 2019 (D.I. 54-2 ¶ 8), QX maintained in the administrative proceedings that it obtained the requisite permits "by the end of *June* 2019 and began running its own payroll at that time."  (AR00006967 n.2; AR00023012) (emphasis added). Second, while QX's Statement of Facts states that QX and its Subsidiary "began to operate as going concerns" by the "end of July 2019" (D.I. 54-2 ¶ 7), QX told SBA in administrative proceedings that QX "had started operating between *June* and July of [2019]."  (AR00023016) (emphasis added). While I note QX's inconsistencies for completeness, I do not consider summary judgment inappropriate in view of QX's representation that "[t]here is no dispute on any material fact and QX is entitled to judgment as a matter of law." (D.I. 55 at 7).

[7]       QX's May 11, 2020 application was an amended version.  In April 2020, QX and its Subsidiary applied for a combined PPP loan of $2,176,700 through Newtek Small Business Finance, Inc. (the "Lender").  The Lender advised QX to separate the loans due to QX and its Subsidiary's distinct Employer Identification Numbers. QX then filed its amended application. QX pleads without dispute from SBA that this first forgiveness application and subsequent dial are not at issue in this action. (D.I. 2 ¶ 34 n.1).

[8]       The Subsidiary received a fully-forgiven loan not at issue in the present action.

[9]       On June 15, 2022, SBA issued its first final loan review decision denying QX full forgiveness of the PPP Loan due to lack of supporting documentation. (AR-00023009).  On July 15, 2022, QX appealed the First Decision to the Office of Hearings and Appeals ("OHA"), and, on

because QX "was established and had business operations to include revenue and payroll costs prior to June 30, 2019, it was not eligible to use a new business methodology [set forth in Section (II)] for calculating the maximum eligible loan amount in accordance with the CARES Act." (AR00007073). Specifically, SBA reasoned:

> The 2019 tax return, Form 1065, for the borrower indicates the business started on April 15, 2019, which is confirmed by the declaration letter from principal owner, Christopher Carey. In addition, the Borrower entered an Asset Purchase Agreement and an accompanying Transition Services Agreement on June 7, 2019. Per the submitted Transition Services Agreement, operation of the business was subject in all respects to the direction of QX Logistix and QX Logistix had sole responsibility for billing and collecting activities with exclusive ownership of accounts and receivables generated by the business. Further the borrower, QX Logistix (DE), was responsible for reimbursing the seller for all operating costs, which included, "all salary, benefits and other compensation payable to employees." Business operations during June 2019 and July 2019 were further verified using submitted bank statements, which highlighted revenue from operations and reimbursements to EZ Mailing Services for payroll costs.

(AR00007072-73). Noting that QX had nine months of payroll from which to calculate a monthly average, SBA then recalculated QX's maximum eligible loan amount using the formula in Section (I), finding that "the total eligible payroll costs equal $1,930,501.54, producing a calculated maximum eligible loan amount of $536,250.43, which is 2.5 times the 9-month average monthly payroll and less than the disbursed loan amount of $1,541,000." (AR00007073). SBA limited QX's loan forgiveness to $536,250.43.

On June 13, 2024, QX appealed the Decision to the Office of Hearings and Appeals ("OHA"). QX argued, in part, that QX could not have used the methodology outlined in Section (I) because it had not been in business for one year before applying for and receiving the PPP loan.

---

September 21 and 27, 2022, respectively, SBA withdrew the First Decision and OHA dismissed the first appeal. (*Id.*).

(AR00023015). QX further maintained that because it used the entire amount of the loan on payroll costs, it was entitled to full forgiveness because "Congress further provided that PPP loans issued under the CARES Act would be eligible for forgiveness to the extent they were used for specific business costs, including payroll." (AR00023017). QX also argued that SBA should be estopped from denying QX's loan forgiveness application because "Congress promised that 'if you keep your workers on the payroll, that portion of the loan will be forgiven.'" (*Id.*). According to QX, SBA conducted an "impermissible bait and switch" when it denied QX's "application for loan forgiveness on the ground that QX Logistix should not have been approved for a PPP loan in that amount in the first place." (*Id.*)

OHA disagreed, concluded that QX was "in business" by June 30, 2019, and affirmed the Decision on November 19, 2024. (AR00023005-41). Noting that the CARES Act does not define "being in business" and that QX offered no definition of either "new business" or "being in business" (AR00023029), SBA borrowed from a definition for "new business" found in SBA's Standard Operating Procedure ("SOP") 50 10 5 (K). The SOP defined "new business" as "one that has been in operation for 2 years or less at the time the loan is approved and that operations are deemed to begin when the business begins generating revenue from its intended operations." (AR00023028-29). OHA reasoned that, "revenue generation is a process established by an entity with the goal of eventually creating income and that it is not necessary to actually create income when that goal is formulated, but rather to establish a means to eventually create income." (AR00023029 (emphasis omitted)). Thus, understanding "in business" in Section (II) to mean "when the business begins generating revenue from its intended operations," OHA concluded that QX was first "in business" in April 2019 when it was formed as a legal entity with the "intent" to generate revenue (AR00023030), and that QX's "first sale" occurring on June 10, 2019 and

multiple sales thereafter were "consistent with its plan of 'revenue generation.'" (AR00023032-33). Finally, OHA declined estopping SBA from denying QX full forgiveness after finding that the CARES Act and implementing regulations gave SBA authority "to set criteria for issuance of PPP loans and review of loan and forgiveness applications," particularly as the PPP was administered within SBA's existing Section 7(a) loan program. (AR00023038-39).

On January 21, 2025, QX filed the instant petition seeking judicial review of the Decision. (D.I. 2). Asserting two violations of the Administrative Procedure Act, 5 U.S.C. § 706, QX argues that SBA's denial of full loan forgiveness was contrary to law (first cause of action) and arbitrary and capricious (second cause of action). (*Id.*). SBA answered. (D.I. 41).

On April 28, 2025, QX moved to compel SBA to produce documents and communications related to the Decision, as well as expert discovery, a privilege log, and authorization to issue third-party subpoenas. (D.I. 43). Judge Noreika denied QX's motion, noting that QX "does not contend that the SBA's factfinding procedure was improper," (D.I. 51 ¶ 5), that QX "does not explain why, for example, the SBA would have been motivated to treat it unfairly" (*Id.* ¶ 3), and that that SBA's adjudicatory process did not suggest bias or bad faith. (*Id.* ¶ 4).

The parties then filed the instant summary judgment motions consistent with an earlier-entered joint briefing schedule. (D.I. 45). QX seeks full forgiveness of the PPP loan, which SBA opposes.

## II.    LEGAL STANDARD

A legal issue involving a federal agency decision may be resolved as a matter of law at summary judgment. *See, e.g.*, *Celebrity of Springfield, LLC v. United States Small Bus. Admin.*, C.A. No. 23-01720-WJM-CLW, 2025 WL 1276104, at *4 (D.N.J. May 2, 2025); *see also Manney v. U.S. Dep't of Homeland Sec.*, C.A. No. 24-760, 2025 WL 1550233, at *3 (E.D. Pa. May 29,

2025) ("For review of agency action under the APA, summary judgment is the proper mechanism by which a district court determines as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review.") (citation and internal quotation marks omitted)).  Under the APA, a reviewing court must "hold unlawful and set aside agency action" found to be, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  When interpreting a federal statute—including a statute that a defendant agency is charged with administering—the court must "exercise independent judgment." *Bd. of Trs. of Bakery Drivers Loc. 550 & Indus. Pension Fund v. Pension Benefit Guar. Corp.*, 136 F.4th 26, 29 (2d Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024)).

## III.    DISCUSSION

QX seeks to reverse the Decision on two grounds. First, QX contends that, because it was entitled to calculate its loan amount under Section (II) as an entity "not in business" during the relevant time frame, SBA's denial of its loan forgiveness application was contrary to law.  Second, QX contends that SBA's Decision was arbitrary and capricious because SBA has not consistently applied a definition of "in business" in this context.

### A.  Whether  Denial of QX's Loan Forgiveness Application Was Contrary to Law

Under the APA, courts must invalidate agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A).   QX's claim is that by misinterpreting 15 U.S.C. § 636(a)(36)(E)(i), SBA acted contrary to law.  As the parties seem to agree, SBA's legal interpretation of the statute is not entitled to deference under *Loper Bright*.  (D.I. 54-1 at 5; D.I. 56 at 7 n.2).

          *i.   What "not in business" means*

As the parties dispute the meaning of 15 U.S.C. § 636(a)(36)(E)(i), which presents a question of statutory interpretation, I begin with the statute.[10]  Title 15 of United States Code § 636(a)(36)(E)(i) sets forth two methodologies—Sections (I) and (II)—that a borrower could use to calculate its maximum loan amount:

> (E) Maximum loan amount - Except as provided in subparagraph (V), during the covered period, with respect to a covered loan, the maximum loan amount shall be the lesser of—
> > (i)
> > > (I) the sum of—
> > > > (aa) the product obtained by multiplying—
> > > > > (AA) the average total monthly payments by the applicant for payroll costs incurred during the 1-year period before the date on which the loan is made, except that an applicant that is a seasonal employer shall use the average total monthly payments for payroll for any 12-week period selected by the seasonal employer between February 15, 2019, and February 15, 2020; by
> > > > > (BB) 2.5. . .
> > > > (bb) . . . or
> > > (II) if requested by an otherwise eligible recipient that was not in business during the period beginning on February 15, 2019 and ending on June 30, 2019, the sum of—
> > > > (aa) the product obtained by multiplying—
> > > > > (AA) the average total monthly payments by the applicant for payroll

---

[10]    QX argues that the statute is ambiguous; the SBA says that it is not.  Post *Loper Bright*, I need not determine at this stage whether the statute is ambiguous.  "As a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*."  *Seven County Infrastructure Coalition v. Eagle County, Colorado*, 605 U.S. 168, 179 (2025) (citing *Loper Bright*, 603 U.S. at 391–392).  But a court "must accept an agency's factual findings as conclusive if they are supported by substantial evidence given the record as a whole."  *Axalta Coating Systems LLC v. Federal Aviation Administration*, 144 F.4th 467, 472 (3d Cir. 2025) (internal citationd and quotation marks omitted).

> costs incurred during the period beginning on January 1, 2020 and ending on February 29, 2020; by (BB) 2.5 . . .
>
> (bb) . . . or
>
> (i) $10,000,000.

QX offers two views of 15 U.S.C. § 636(a)(36)(E)(i) to justify calculating its loan under Section (II). First, QX argues that "if an applicant does not have one year of payroll from which to calculate a monthly average, the Act instructs the applicant to calculate its average from payroll in January and February 2020" under Section (II). (D.I. 54-1 at 4-7). But nowhere does the CARES Act contain such "instruct[ion]." The plain text makes Section (II)'s "not in business" methodology only available to applicants "not in business during the period beginning on February 15, 2019 and ending on June 30, 2019." 15 U.S.C. § 636(a)(36)(E)(i)(II). Nowhere does the text condition Section (I)'s applicability on having *at least* one full year of payroll or otherwise qualify an entity with less than one year of payroll to use Section (II). Rather, the text makes plain that if an entity does not satisfy Section (II)'s "not in business" requirement, then it must calculate its loan eligibility under Section (I) by averaging payroll costs "during the 1-year period before the date on which the loan is made"—even if it does not have a full year of payroll.[11] *Id.* Therefore, QX was not entitled to calculate its loan under Section (II) on grounds that it had less than one year of payroll.

Second, QX maintains that was "not in business" under Section (II) because to be "in business" means having payroll costs, and during the relevant period, QX had none.

---

[11] QX acknowledges this reading of the statute, conceding "that 'the in business' finding is dispositive in this action because . . . the "in business" finding determines QX's eligibility." (D.I. 54-1 at 7).

The parties agree that the CARES Act does not define "in business." (D.I. 54-1 at 8; D.I. 56 at 4). In the administrative proceedings, SBA borrowed from the SOP's definition of "new business" and suggested that to be "in business" means to generate revenue from an entity's intended operations. (AR00023022). QX offered no alternative definition of "new business" or "in business" during the administrative process. (AR00023012-14; AR00023029). Nor did QX object to SBA's use of its SOP to interpret those terms. (AR00023029). QX now argues that "the natural reading of Congressional intent is that payroll costs are necessary for an entity to be 'in business'" because "PPP loans revolve around payroll costs." (D.I. 54-1 at 8).

I disagree. Even if I were to accept QX's view that payroll considerations predominated Congressional intent in establishing the PPP and that such payroll costs could conceivably be weighed as part of what it means for an entity to be "in business," there is no textual support in the CARES Act to make such payroll costs a *necessary* predicate to being "in business." QX cited none in the administrative proceedings, and it cites none here.

To the extent QX now maintains that SBA should not have relied on its SOP to define "in business," that view ignores Congress' decision to situate the CARES Act and PPP loan program within the existing framework of SBA's Section 7(a) loan program. "The PPP was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (quoting *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020)). "[L]ong before the pandemic, Congress granted the SBA 'extraordinarily broad powers' to carry out § 7(a)'s loan program for small businesses." *Celebrity*, 2025 WL 1276104, at *6 (quoting *Small Bus. Admin. v. McClellan*, 364 U.S. 446, 447 (1960)). Under Section 7(a) of the Small Business Act, SBA may "make such rules

and regulations" as it "deems necessary" to implement the loan program, and to "take any and all actions" it determines are "necessary or desirable" in administering, servicing, or resolving loans. 15 U.S.C. § 634(b)(6), (b)(7). When Congress enacted the PPP, it stated that the program would operate "under the same terms, conditions, and processes as a loan made under [Section 7(a)]." 15 U.S.C. § 636(a)(36)(B). QX neither disputes nor addresses these provisions. Nor does QX address Congress's intent that SBA rely on its established processes and procedures, including the SOP, to facilitate disbursement of PPP loans. Accepting QX's view that "in business" equals payroll costs would require me to both ignore the statutory framework situating PPP loans within SBA's existing Section 7(a) loan program and adopt an interpretation of Section (II) untethered from the text of the CARES Act itself. Therefore, having "exercise[d] independent judgment in determining the meaning" of 15 U.S.C. § 636(a)(36)(E)(i), I conclude that "in business" in this context means generating revenue from intended operations. *Loper Bright*, 603 U.S. at 394.[12] SBA did not act contrary to law when it so construed the statute.

## ii. *Whether QX was "not in business"*

QX next argues SBA acted contrary to law by determining QX was "in business" and generating revenue "simply because [Petitioner] was incorporated on April 15, 2019," (D.I. 54-1 at 2). But QX's view is inconsistent with the administrative record. SBA reasoned, and OHA affirmed, that QX was "in business" on June 7, 2019, when it began "generating revenue from its intended operations." (AR00007072–73; AR00023029–32). As of that date, SBA explained that

---

[12]    *See also, e.g.*, *Meduri Farms, Inc. v. U.S. Small Bus. Admin.*, 799 F. Supp. 3d 1144, 1149 (D. Or. 2025) (exercising independent judgment to interpret disputed statutory provision related to PPP loans in CARES Act); *Crouse Health Hosp., Inc. v. United States Small Bus. Admin.*, C.A. No. 23-615 (BKS/ATB), 2025 WL 2161260, at *9 (N.D.N.Y. July 30, 2025) (same); *Salutoceuticals, LLC v. United States Small Bus. Admin.*, 750 F. Supp. 3d 764, 773 (W.D. Tex. 2024) (same).

QX entered into the Asset Purchase and Transition Services Agreement with EZ and UBFF under which QX and its Subsidiary engaged EZ and UBFF to operate its motor carrier business, for an agreed-upon fee schedule, until QX became fully licensed to conduct the business. (AR00007072–73; AR00023028; AR00022645–46 ¶ 1.1). Under the agreement, EZ and UBFF were to operate the business "for the account and on behalf of [QX through its Subsidiary]," and their operation was to "be subject in all respects to [QX through its Subsidiary's] direction and control in accordance with the [TSA]." (*Id.*). SBA noted that QX through its Subsidiary "had sole responsibility for billing and collection activities with exclusive ownership of accounts and receivables generated by the business." (AR00007073). Based on the terms of the agreements, SBA concluded that QX had active business operations under its control prior to June 30, 2019. (AR00007073). SBA and OHA further determined that QX was in business and generating revenue prior to June 30, 2019, based on QX's bank statements reflecting over $1,000,000 in deposits and additions between June 1, 2019 and June 28, 2019. (*Id.*; AR00022505). QX acknowledges such revenue, stating in both its OHA appellate petition and in its instant submissions that its "first sale had been on June 10, 2019, with the Subsidiary's first sale on June 15, 2019," and it "started operating between June and July [2019]." (AR00023015–16; *see also* D.I. 54-1 at 7 n.1).

Thus, the administrative record evidence supports SBA's reasonable finding that QX was "in business" and generating revenue during the period between February 15, 2019 and June 30, 2019 and, therefore, was ineligible to use the Section (II) methodology to calculate its loan amount. QX offers no basis to disturb that rational determination.[13]

---

[13]    *See Celebrity*, 2025 WL 1276104, at *6 (noting that, "While *Loper Bright* abolished *Chevron* deference to an agency's reasonable interpretation of an ambiguous statute, it did not obliterate the APA's mandate that judicial review of agency policymaking and factfinding be

12

\* \* \*

Accordingly, because SBA's determination that QX was "in business" was not contrary to law, I recommend entering judgment in SBA's favor on QX's first cause of action.

## B. Whether Denial of QX's Loan Forgiveness Application Was Arbitrary or Capricious

Under the APA, courts must invalidate agency actions that are "arbitrary, capricious, an abuse of discretion." 5 U.S.C. § 706(2)(A). "Agency action is arbitrary and capricious if it 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 711 (D.C. Cir. 2024) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). QX maintains that SBA acted arbitrarily and capriciously for three reasons.

### i. Whether QX's use of its loan on payroll costs requires full forgiveness

QX argues that SBA should have fully forgiven its loan because, even if it was ineligible to receive certain funds, it undisputedly used the entire amount on payroll costs. (D.I. 54-1 at 11-12). Other courts have rejected this argument, recognizing that the PPP is "a loan guaranty

_____

deferential" and explaining that "touchstone of arbitrariness review is rationality, meaning that the court must analyze whether there is a rational connection between the facts found by the agency and its ultimate decision, based on a consideration of the relevant factors and whether there has been a clear error of judgment") (internal citations and quotation marks omitted); *see also Essintial Enter. Sols., LLC v. United States Small Bus. Admin.*, C.A. No. 22-1507, 2024 WL 5248242, at *3 (M.D. Pa. Dec. 30, 2024) ("When reviewing a federal agency decision, 'the court cannot substitute its own policy judgment for that of the agency, but the court must ensure that the 'agency ... acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.' " (quoting *F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).

program, not a grant program." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 409 (2d Cir. 2022). "[I]f a business is not entitled to a guaranteed loan, then it's not entitled to forgiveness of that loan, either. It would defy ordinary logic to forgive a loan that shouldn't have been granted to begin with. Nothing in the text of the CARES Act contradicts that basic principle." *Bruckner*, 148 F.4th at 344.[14] QX is not entitled to forgiveness of loan funds that QX was ineligible to receive.

### ii. *Whether SBA published contrary guidance*

QX argues that SBA's Decision was arbitrary and capricious because it contradicted two SBA documents purportedly instructing QX to calculate its loan under Section (II). First, QX points to the PPP loan application, which states:

> For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

(D.I. 54-1 at 9; AR00012154). Second, QX points to a PPP program FAQ titled, "How to Calculate Maximum Loan Amounts—By Business Type" which states:

> **10. Question:** I am self-employed and was in operation on February 15, 2020, but was not in operation between February 15, 2019, and June 30, 2019. I will file a Form 1040 Schedule C or Schedule F for 2020. What is my maximum PPP loan amount?
>
> **Answer:** In this case, your maximum PPP loan amount is generally equal to 2.5 times your average monthly payroll costs incurred in January and February 2020, plus the outstanding amount of any

---

[14] SBA identifies *Bruckner* (D.I. 52 at 14-15) and QX does not refute it.

EIDL loan received between January 31, 2020, and April 3, 2020,
that will be refinanced by the PPP loan.

(D.I. 54-1 at 9-10, citing AR00007028). QX asserts that these documents "confirmed that QX

logistics should use the methodology described in [Section (II)]." (D.I. 54-1 at 10). But neither

the PPP loan application nor FAQ define "new business" or "in operation" in a manner that

contravenes the text of 15 U.S.C. § 636(a)(36)(E)(i). On their face, the PPP loan application and

FAQ restate Section (II)'s method for calculating a loan amount. That is, the Section (II)

methodology is available to the same type of entity whether described as a "new business" or a

"self-employed" entity "not in operation between February 15, 2019, and June 30, 2019" or an

"eligible recipient that was not in business during the period beginning on February 15, 2019 and

ending on June 30, 2019." I do not agree that the guidance cited by QX conflicts with the agency's

decisions.

      *iii. Whether SBA should be estopped from denying QX's loan forgiveness application*

      QX argues that SBA should estopped from denying QX's PPP loan forgiveness application

because SBA engaged in "affirmative misconduct." (D.I. 54-1 at 12-13). But QX's petition

contains no allegations of any misrepresentations or affirmative misconduct by SBA. (*See* D.I. 2).

Therefore, this argument has been forfeited. *See Seville Indus., L.L.C. v. United States Small Bus.

Admin.*, 144 F.4th 740, 750 (5th Cir. 2025) (noting that an equitable estoppel claim against was

SBA forfeited when predicate allegations were not plead). Even if it had not been forfeited, QX

identifies no evidence in the administrative record to suggest that SBA engaged in any misconduct.

When denying QX's motion to compel discovery, this Court has already found that nothing about

SBA's adjudicatory process in this case suggests that it acted improperly, in bad faith, or otherwise

engaged in affirmative misconduct. (D.I. 51 ¶¶ 3-4, rejecting rejected as "untenable" QX's

argument that the Court can imply bad faith or bias "simply because an applicant was (partially) rejected."). QX's estoppel claim fails.

* * *

Accordingly, because SBA's Decision was neither arbitrary nor capricious, I recommend entering judgment in SBA's favor on QX's second cause of action.

## IV.    CONCLUSION

For the reasons set forth above, I recommend that SBA's Motion be GRANTED and QX's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 21, 2026

_____
Laura D. Hatcher
United States Magistrate Judge